**David E. PALMER**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security.**

**Civil Action No. 97–2063.**

United States District Court, E.D. Pennsylvania.

Feb. 9, 1998.

---

1. Kenneth S. Apfel was appointed Commissioner of Social Security on September 29, 1997 and has been substituted automatically for his predecessor, Acting Commissioner of Social Security John J. Callahan. *See* Fed.R.Civ.P. 25(d)(1).

Craig M. Kellerman, Norristown, PA, for Plaintiff.

James A. Winn, U.S. Dept. of Health and Human Services, Philadelphia, PA, for Defendant.

### MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff David E. Palmer ("Palmer") seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S .C. § 1381, *et seq.* The parties' cross-motions for summary judgment were referred to United States Magistrate Judge Peter B. Scuderi ("Judge Scuderi") for a Report and Recommendation. Judge Scuderi recommended that Palmer's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted. For the reasons stated below, the court will grant summary judgment in favor of the Commissioner.

### BACKGROUND

Palmer, born September 20, 1954, was forty-one years old at the time of his hearing before the administrative law judge ("ALJ"). (Tr. 31, 219). After graduating from high school, Palmer attended cooking school, tractor trailer school, received welding training and completed a computer programming course at home. (Tr. 31, 105, 113, 226). Palmer has worked as a cook, tractor trailer driver, newspaper delivery driver, cab driver, television cable installer, security guard, gas station attendant/cashier and telemarketer. (Tr. 40–43, 48–49, 51–52, 113, 123–27, 226–27).

Palmer, alleging a disabling injury and surgery on his left knee, filed a claim for DIB and SSI on March 10, 1994; he alleged an onset date of March 9, 1994. (Tr. 73–76, 190). Palmer subsequently amended the onset date to July 27, 1993. (Tr. 29).[2] Palm-

---

2. Palmer previously sought DIB benefits for an injury to his right leg on June 6, 1985. (Tr. 210–13, 222–29). That application was denied, (Tr. 214–15); Palmer did not seek reconsideration. Palmer, alleging a disabling left knee injury since July 27, 1993, then filed applications for DIB and SSI on August 9, 1993. (Tr. 59–62, 109–16, 194–97). Those applications were denied. (Tr. 63–68). Palmer did not seek reconsideration.

er's applications for benefits were denied initially and upon reconsideration. (Tr. 77–79, 82–85, 198–204).

Palmer requested a hearing before an ALJ from the Office of Hearings and Appeals. (Tr. 25). On April 25, 1996, the ALJ conducted a hearing on Palmer's claims. (Tr. 26–58). The ALJ denied Palmer's claims by decision dated August 5, 1996. (Tr. 12–25). Palmer requested review of the ALJ's decision; the Appeals Council denied Palmer's request on January 22, 1997. Palmer then sought review of the Commissioner's final decision in this court.

To establish a disability under the Act, an applicant must show that there is some "medically determinable basis for an impairment that prevents engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir.1988) (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987)). An applicant can establish a disability by: 1) producing medical evidence showing he is disabled *per se* by meeting or equaling the impairments listed in the regulations, *see Stunkard*, 841 F.2d at 59; or 2) demonstrating an impairment severe enough to prevent the applicant from engaging in "any kind of substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *see Cerar v. Secretary of Dept. of Health & Human*

*Servs.*, No. 93–6973, 1995 WL 44551, at *2 (E.D.Pa. Feb.1, 1995) (Shapiro, J.).

The ALJ decided this case under the five-step sequential evaluation of disability claims. *See generally Heckler*, 461 U.S. at 467–68; *Santise v. Schweiker*, 676 F.2d 925, 934–35 (3d Cir.1982), *cert. dismissed*, 461 U.S. 911, 103 S.Ct. 1889, 77 L.Ed.2d 280 (1983). The five-step process is similar for both DIB and SSI.[3] The burden of establishing each step with sufficient medical evidence lies with the applicant. *See* 42 U.S.C. § 423(d)(5).

The ALJ made the following findings. First, the ALJ determined Palmer "has not engaged in substantial gainful activity since March 9, 1994." (Tr. 19). Second, the ALJ found the evidence established that Palmer suffers from patellofemoral degenerative joint disease with chronic recurrent reaggravation in his left knee. (Tr. 19). The ALJ found this to be a severe impairment. (Tr. 19). Third, the ALJ concluded this severe impairment did not meet or equal any impairments listed in the regulations. (Tr. 19). Fourth, the ALJ determined the impairment precludes Palmer from performing any of his past work. (Tr. 19).

The ALJ reached the last step of the sequential evaluation and found Palmer "capable of making an adjustment to work which exists in significant numbers in the national economy." (Tr. 20). In particular, the ALJ found Palmer capable of performing sedentary work. The ALJ adopted the vocational

3. The five steps are:

1. "If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 416.920(b).

2. "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 416.920(c).

3. "If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s),

we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d); *see also* 20 C.F.R. § 416.920(d).

4. "If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 416.920(e).

5. "If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled." 20 C.F.R. § 404.1520(f)(1); *see also* 20 C.F.R. § 416.920(f)(1).

expert's testimony that Palmer could work as an inspector/examiner or cashier, as long as he has the option "to alternate at will between a sitting and a standing position, and with no prolonged standing or walking." (Tr. 19). Because the ALJ found Palmer could perform other jobs in existence in the national economy, see Rossi v. Califano, 602 F.2d 55, 57 (3d Cir.1979), she found Palmer not disabled and denied him benefits.

Judge Scuderi issued a Report and Recommendation that the Commissioner's decision be upheld and summary judgment be granted in his favor. Palmer objected to Judge Scuderi's Report and Recommendation on the ground that Judge Scuderi erred in determining Palmer was capable of performing a limited range of sedentary work.

## DISCUSSION

### I. Standard of Review

■ The court conducts de novo review of the portions of a magistrate judge's Report and Recommendation on a dispositive motion to which specific objections have been filed. See 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b).[4]

In reviewing the decision of the Commissioner, this court must uphold the denial of benefits as long as the Commissioner's determination is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir.1986). "Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion." Maduro v. Shalala, No. 94–6932, 1995 WL 542451, at

*1 (E.D.Pa. Sept.9, 1995) (Shapiro, J.); see Richardson, 402 U.S. at 401; Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Substantial evidence is "more than a scintilla of evidence but may be somewhat less than a preponderance of the evidence." Maduro, 1995 WL 542451, at *1; see Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir.), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971). The court cannot conduct de novo review of the Commissioner's decision or re-weigh the evidence of record. See Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986), cert. denied, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987).

### II. Substantial Evidence of Palmer's Ability to Perform Limited Sedentary Work

■ Palmer claims the record lacks substantial evidence supporting the ALJ's conclusion that he has the residual functional capacity to perform limited sedentary work[5] available in the national economy.

Palmer testified at his hearing that he can sit comfortably for a half hour at a time, although his left knee goes numb and the pain precludes him from sitting or standing for longer amounts of time. (Tr. 33). Palmer obtained treatment from Norman B. Stempler, D.O. ("Dr. Stempler") for his left knee from January 15, 1992 through June 6, 1995; Dr. Stempler performed three arthroscopic procedures on Palmer's knee. (Tr. 166–85, 238–63). The first surgery occurred on February 5, 1992; Palmer reported "reso-

4. A party who files objections to a magistrate judge's Report and Recommendation is obliged to file "specific" objections. See Fed.R.Civ.P. 72(b). General or blanket objections do not comply with Rule 72(b) and need not be addressed by the district court. See, e.g., Goney v. Clark, 749 F.2d 5, 7 (3d Cir.1984); see also Soliz v. Chater, 82 F.3d 373, 375 (10th Cir.1996) (Blanket objection that the findings were not based on substantial evidence insufficient.); Howard v. Secretary of Health & Human Servs., 932 F.2d 505, 508 (6th Cir.1991) (same). Here, Palmer's entire objection amounts to one sentence, that Judge Scuderi "erred as a matter of law and abused his discretion in determining that substantial evidence supported the Commissioner's findings that Claimant is able to do a limited

range of sedentary work as defined in 20 C.F.R. Section 416.967(a)." Although this is little more than a generalized objection, the court will not penalize Palmer for his attorney's work by automatically adopting Judge Scuderi's findings as unopposed.

5. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

lution" of his left knee pain. (Tr. 176, 182–83, 260–61).

Palmer, complaining of renewed left knee pain, sought treatment from Dr. Stempler in July, 1993. (Tr. 175, 258–59). A CT scan of Palmer's knee performed on July 30, 1993 indicated no abnormalities. (Tr. 150, 174, 252, 257). After unsuccessfully using non-invasive treatment, Dr. Stempler performed a second arthroscopy on August 23, 1993. (Tr. 180, 253–54). According to subsequent physical therapy reports, Palmer's knee condition improved, although he required continued exercise and physical therapy. (Tr. 166, 169, 169, 173–74, 249–52).

Palmer had an MRI on his left knee on March 7, 1994. The MRI revealed "intrasubstance degenerative change of both posterior horns of lateral and medial meniscus," a "small joint effusion" and "a small popliteal cyst." (Tr. 185). The MRI also showed no evidence of a muscular tear, "grossly unremarkable" anterior horns and normal ligaments. Id. While there were signs of wear, Dr. Stempler found no evidence of "meniscal damage." (Tr. 172, 246).

On March 28, 1994, Dr. Stempler evaluated Palmer's ability to perform physical activities and concluded Palmer did not need a devise to aid in walking, although Palmer did occasionally use cane. (Tr. 161). Dr. Stempler determined Palmer could lift or carry up to ten pounds, stand or walk for up to two hours and sit or reach without difficulty. (Tr. 162–63). Dr. Stempler found Palmer was precluded from pushing or pulling due to his knee problem. Id.

After Palmer continued to complain of knee pain, Dr. Stempler performed a third arthroscopic procedure on July 22, 1994. (Tr. 159, 171–72, 242–43). Following this procedure, Palmer reported improvement in his left knee; Dr. Stempler recommended continued exercise. (Tr. 170, 241). In September, 1994, Palmer stated he exercised ten times a day, washed dishes, shopped, cooked "all kinds" of meals, and drove a car with an automatic transmission. (Tr. 131–35). Although Palmer complained of knee pain between October and December, 1994, Dr. Stempler found mild pain relievers [6] and exercise sufficient. (Tr. 240–41).

Karl Rosenfeld, M.D. ("Dr.Rosenfeld"), evaluated Palmer on December 19, 1994. (Tr. 276–78). Dr. Rosenfeld determined Palmer's knee "does travel through a full range of motion" and had no swelling. (Tr. 277). Dr. Rosenfeld found Palmer capable of performing a sit-down job. (Tr. 278).

Palmer moved to a new address in March, 1995. He assisted in the moving process to the extent he felt able. (Tr. 47–48). After relocating, Palmer began to see Dean W. Trevlyn, M.D. ("Dr.Trevlyn") in July, 1995. Dr. Trevlyn reported "minimal effusion" of Palmer's left knee, "significant quads atrophy," "no ligamentous instability," and a range of motion from 0 to 90 degrees. (Tr. 275). An x-ray of Palmer's left knee showed "no abnormalities" and proper alignment of the patella. Id.

Dr. Trevlyn performed a tibial tuberale elevation on Palmer's knee on August 16, 1995. (Tr. 274). In September, 1995, Dr. Trevlyn reported Palmer "has been very comfortable and in fact … has been ambulating without his brace for several weeks." (Tr. 270). The range of motion in Palmer's left knee was from 0 to 110 degrees. Id. Dr. Trevlyn stated Palmer's pain had been "nearly completely resolved." Id.

In November, 1995, Dr. Trevlyn stated Palmer had "no pain behind the kneecap and only occasional ache in the region of the incision." (Tr. 267). Palmer's knee had a range of motion between 0 and 130 degrees. Dr. Trevlyn recommended continued exercise. Id.

The ALJ, considering all of the above evidence, concluded Palmer was severely impaired by patellofemoral degenerative joint disease with chronic recurrent reaggravation in his left knee. (Tr. 19). However, the ALJ determined that impairment did not affect Palmer's residual functional capacity to perform other sedentary work. Palmer, arguing he does not have the capacity to perform sedentary work, objects to that finding.

---

6. Dr. Stempler prescribed Darvocet for use "as needed." (Tr. 240). Darvocet is appropriate for alleviating mild to moderate pain. *Physician's Desk Reference* 1473 (51st ed.1997).

"Residual functional capacity is an assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a). At the hearing, Palmer testified he could sit or stand for half-hour periods of time and walk around the block every day. (Tr. 33, 39). Dr. Stempler and Dr. Rosenfeld examined Palmer and concluded his impairment did not preclude him from performing sedentary work activities, as long as he did not have to do pushing or pulling. (Tr. 162–63, 278); *see* 20 C.F.R. § 416.967(a). The ALJ, based on the vocational expert's testimony, determined Palmer could perform sedentary work as long as he was allowed to alternate between sitting and standing. Upon review of the record, the court cannot say that the ALJ's determination was not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A "reasonable mind" might find sufficient evidence in the record to conclude that Palmer could perform sedentary work. *See Dobrowolsky*, 606 F.2d at 406; *Maduro*, 1995 WL 542451, at *1. The court will uphold the ALJ's finding that Palmer is capable of performing a limited range of sedentary work. Therefore, the court will grant summary judgment in favor of the Commissioner.[7]

---

7. Judge Scuderi also determined the ALJ properly considered evidence of Palmer's subjective complaints of pain in making her findings. *See* Report & Recommendation at 11–14. Palmer's only objection is to Judge Scuderi's finding that Palmer is capable of performing limited sedentary work. The court only reviews those portions of the Report and Recommendation "to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, Judge Scuderi's finding regarding evidence of Palmer's pain remains unopposed.