Sharon A. **HIRSCHFELD** Plaintiff,

v.

Kenneth S. **APFEL, Commissioner of Social Security**

No. CIV. A. 00–549.

United States District Court, E.D. Pennsylvania.

Feb. 26, 2001.

Barbara H. Beringer, Wyomissing, for Sharon A. Hirschfeld, Plaintiff.

Nicholas Cerulli, Social Security Administration, Office of the General Counsel, William B. Reeser, Social Security Administration, Office of General Counsel, Phila,

for Commissioner of Social Security, Defendants.

### MEMORANDUM & ORDER

KAUFFMAN, District Judge.

Plaintiff, Sharon A. Hirschfeld ("Hirschfeld"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(3), seeking judicial review of the final decision of the Commissioner of the Social Security Administration, Defendant Kenneth S. Apfel (the "Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–433. Both Hirschfeld and the Commissioner have filed motions for summary judgment. The Court designated Magistrate Judge Arnold C. Rapoport to submit proposed findings' of fact and recommendations for the disposition of Hirschfeld's appeal. *See* 28 U.S.C. § 636(b)(1)(B); Local Rule 72.1(d)(1)(C).

Magistrate Judge Rapoport recommended that the Court deny Hirschfeld's motion for summary judgment and grant the Commissioner's motion for summary judgment. Hirschfeld has objected to the Magistrate Judge's Report and Recommendation. The Court therefore must "make a *de novo* determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(B). Having reviewed the Magistrate Judge's report and Hirschfeld's objections, the Court will approve and adopt the Report and Recommendation of the Magistrate Judge.

## I. RELEVANT PROCEDURAL HISTORY

Hirschfeld filed an application for Disability Insurance Benefits on January 16, 1997, alleging that chronic fatigue syn-

drome (CFS), fibromyalgia, Raynaud's syndrome, degenerative spondylosis, hypotension, and gastrointestinal reflux disorder (GERD) had rendered her disabled since November 30, 1990. (R. at 18.) After her application was denied initially and upon reconsideration, (R. at 67, 72), Hirschfeld requested a hearing before an administrative law judge ("ALJ"), (R. at 75).

ALJ Jonathan L. Wesner held a hearing in this matter on March 4, 1998, during which he heard testimony from the claimant and from a Vocational Expert, and he reviewed the medical reports on file. (R. at 17.) Following the hearing, the ALJ found that Hirschfeld had a high school education and was a "younger individual" within the meaning of the Regulations. (R. at 22.)[1] The ALJ further found that Hirschfeld had a severe impairment due to chronic fatigue syndrome and mild degenerative spondylosis, but that she retained the residual functional capacity to perform a range of sedentary work. (R. at 18, 21.) Based on these findings, the ALJ concluded that Hirschfeld was not disabled as defined by the Social Security Act and therefore was not eligible for disability benefits. (R. at 17, 19.) The Appeals Council denied Hirschfeld's request for a review of the ALJ's Decision on November 30, 1999, thus rendering the ALJ's Decision the final decision of the Commissioner. (R. at 6.) On January 31, 2000, Hirschfeld filed this action seeking reversal of the final decision of the Commissioner.

## II. STANDARDS OF REVIEW

### A. The Commissioner's Decision

■ Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C.

---

1. Because Hirschfeld was last insured for disability benefits on December 31, 1995, the ALJ's disability findings are as of that date. (R. at 17.)

§ 405(g). The scope of the Court's review of the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Berger v. Apfel,* 200 F.3d 1157, 1161 (8th Cir.2000); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Kelley v. Apfel,* 185 F.3d 1211, 1213 (11th Cir.1999); *Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999); *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999); *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir.1998); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Jesurum v. Secretary of the United States Dep't of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995); *see Schaudeck v. Commissioner of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999) (noting that the circuit court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence) (citing *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir.1995)).

██ "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999) (quoting *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)); *see also Plummer,* 186 F.3d at 427 (noting that "substantial evidence" has been defined as "more than a mere scintilla"). "The court cannot conduct *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D.Pa. 1998).

## B. The Magistrate Judge's Report and Recommendation

The Court does review *de novo,* however, those portions of the Magistrate Judge's Report and Recommendation to which Hirschfeld has objected. *See* 28 U.S.C. § 636(b)(1)(C). Therefore, the Court "may accept, reject or modify, in whole or in part, the findings and recommendations made by the magistrate." *Id.* In considering Hirschfeld's objections to the Magistrate Judge's Report and Recommendation, the Court has independently reviewed the entire record, including the Report and Recommendation, the ALJ's written Decision, the transcript of the hearing, the hearing exhibits, and the summary judgment briefs.

## III. SOCIAL SECURITY LAW

Title II of the Social Security Act (the "Act"), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a disability. 42 U.S.C. § 423(a)(1)(D). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Act further provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To qualify for disability benefits, therefore, a claimant must show that a medically determinable physical or mental impairment prevents him or her from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The claimant carries the initial burden of proving disability. *Id.* § 423(d)(5); *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir.1999). Where the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Plummer,* 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).

Under the Social Security Regulations, an application for disability benefits is evaluated according to a five-step sequential process. *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); *see* 20 C.F.R. § 404.1510. If the claimant is doing substantial gainful activity, the ALJ will determine that he or she is not disabled. 20 C.F.R. § 404.1520(a). If the claimant is not do-

ing substantial gainful activity, the ALJ proceeds to step two. In step two, the ALJ considers the effect of the claimant's physical or mental impairment. 20 C.F.R. § 404.1520(a). If the claimant does not have an impairment or combination of impairments that significantly limit his or her physical or mental ability to do basic work activities, the ALJ will find that he or she does not have a "severe impairment" and, therefore, is not disabled. 20 C.F.R. § 404.1520(c). If the claimant has a "severe impairment," the ALJ proceeds to step three. In step three, the ALJ determines whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. § 404.1520(d). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step. In step four, the ALJ determines whether the impairment prevents the claimant from performing work that he or she has performed in the past. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, the ALJ proceeds to the fifth and final step of the process. In step five, the ALJ considers the claimant's "residual functional capacity" and his or her "age, education, and past work experience" to determine whether he or she can do other substantial gainful work that exists in the national economy. 20 C.F.R. § 404.1520(f). The claimant is entitled to disability benefits only if he or she is not able to perform such other work. 20 C.F.R. § 404.1520(f).

## IV. THE PROCEEDINGS BEFORE THE ALJ

The ALJ proceeded through all five steps of the sequential evaluation process before making the determination that Hirschfeld was not disabled because she "could perform sedentary work." (R. at 24.) He initially found that Hirschfeld satisfied the requirements of step 1 of the sequential evaluation process because she had not engaged in substantial gainful activity. (R. at 18.) The ALJ next found that Hirschfeld satisfied the requirements of step 2 because she suffered from chronic fatigue syndrome and mild degenerate spondylosis, which are severe impairments by Social Security definition. (R. at 18.) The ALJ went on to find that Hirschfeld's impairments did not qualify for a conclusive presumption of disability because "no treating or examining physician [had] mentioned findings equivalent in severity." (R. at 18.) The ALJ, therefore, proceeded to step four of the sequential evaluation process, where he found that Hirschfeld did not have any past relevant work that she could perform. (R. at 22.)

The ALJ then proceeded to the fifth step of the sequential evaluation process, a determination of whether, despite Hirschfeld's severe impairment, and considering her age, education, and past work experience, she retained sufficient functional capacity to do other work that exists in significant numbers in the national economy. (R. at 22.) Upon considering the medical reports of five doctors who had examined or treated Hirschfeld, the ALJ concluded that Hirschfeld's impairments limited her functional capacity only moderately. In reaching his Decision, the ALJ relied on the opinions of Hirschfeld's treating physician, Dr. Kenneth J. DeBenedictis. Dr. DeBenedictis noted in his records that Hirschfeld's "chronic fatigue syndrome had improved dramatically" and that she "had done well adjusting her life-

style to tolerate" the condition. (R. at 19.) The ALJ also relied on the medical records of Dr. Close, the neurologist from whom Hirschfeld sought treatment for back pain. Dr. Close noted that Hirschfeld "had consistently normal neurological examinations" and that he "was impressed with how flexible" she was. (R. at 19.) The remainder of the medical evidence, according to the ALJ, "did not indicate that any aggressive treatment was needed to treat [Hirschfeld] or that there were any objective findings that warranted such treatment." (R. at 19.)

The ALJ also gave consideration to Hirschfeld's subjective reports of her condition. Hirschfeld testified at the hearing that she had difficulty sleeping and concentrating because of pain and fatigue. (R. at 41, 44–47.) The ALJ examined Hirschfeld's credibility with respect to the degree of pain which she experienced, (R. at 16), and noted that Hirschfeld

> reported that her daily activities are very restricted as a result of her impairments. She is nonetheless able to tend to her personal needs and hygiene and she stretches for thirty minutes daily to loosen her muscles. She enjoys reading and watching television, but reports that reading can wear her out. She reported at one place that she sleeps ten to twelve hours each night and naps during the day. However, she testified that she has difficulty sleeping. It is interesting to note that since [Hirschfeld's] alleged onset of disability, there are several references in the physicians' notes that she traveled to places such as Florida, the west coast, and possibly Venezuela.

(R. at 21.) In comparing Hirschfeld's testimony with the medical evidence, the ALJ found that Hirschfeld "underreported the level of her ability to engage in daily activities" and tended to "overstate the severity of her limitations, particularity in the context of pain," because the "level of pain to

which she testified simply was not consistent with the existence of any substantial medical evidence demonstrating signs, symptoms and other medical findings consistent with disabling pain." (R. at 20.)

Based on the medical evidence and Hirschfeld's own representations, the ALJ made the following findings regarding Hirschfeld's residual functional capacity:

> She can frequently lift and carry at least five pounds and can occasionally lift and carry up to ten pounds. She can walk or stand about two hours in an eight hour work day and can sit at least six hours in an eight hour workday. She is limited in her ability to push and pull with her upper and lower extremities. She can rarely climb ladders, ropes, or scaffolds, or balance, kneel, crawl, crouch, or squat. She can occasionally climb ramps and stairs. She can occasionally bend or stoop. She should avoid exposure to temperature extremes, dampness, wetness, humidity, fumes, odors, dust, gases, and poor ventilation.

(R. at 21–22.)

The ALJ also heard the testimony of a Vocational Expert, George A. Starosta, concerning the existence of jobs regionally and nationally that Hirschfeld could perform. (R. at 22–23.) Mr. Starosta testified that Hirschfeld's previous work experiences, with the exception of her first job, were all sedentary and semi-skilled, and that sedentary work was the easiest form of work because "standing and walking is nil." (R. at 59–60.)[2] The ALJ then asked the expert hypothetical questions that incorporated the residual functional capacity ascribed to Hirschfeld as stated above. In response to these questions, Mr. Starosta testified that a person's inability to stand for more than two hours in an eight-hour day would have no effect on sedentary work, that the activities in which Hirschfeld's capacity was limited were not involved in sedentary jobs, and that a person with Hirschfeld's ascribed residual functional capacity would still have "the full range of sedentary available." (R. at 60–61.)[3] Based on the Vocational Expert's testimony, the ALJ concluded that "there were jobs existing in significant numbers in the national economy which [Hirschfeld] was able to perform," because the range of sedentary work "was not significantly diminished by her non-exertional restrictions." (R. at 22.)

## V. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In his Report and Recommendation, Magistrate Judge Rapoport concluded that there was substantial evidence in the record to support the ALJ's opinion and conclusions. (R & R at 22.) He determined that the ALJ, in reaching his decision, properly relied upon the opinion of Hirschfeld's treating physician, Dr. DeBenedictis. (R & R at 17.) The Magistrate Judge also found that Hirschfeld engaged in significant daily activities and that her condition did not render her totally disabled from all types of gainful employment. (R & R at 17–18, 21.) Lastly, he concluded that it was within the ALJ's discretion to determine credibility and to reject Hirschfeld's claim of disabling pain. (R & R at 21.)

Hirschfeld argues that the Court should reject the Report and Recommendation because the Magistrate Judge erred in concluding that the ALJ had adequately

---

**2.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, . . . walking and standing are required occasionally." 20 C.F.R. § 404.1567(a).

**3.** The ALJ offered Hirschfeld the opportunity to question the Vocational Expert, but she declined. (R. at 63.)

considered the opinion of her treating physician and her own subjective complaints. She also claims that the Magistrate Judge improperly agreed with the ALJ's finding that her fibromyalgia was not a severe impairment. Lastly, Hirschfeld contends that the Magistrate Judge erred in failing to analyze her claim of chronic fatigue syndrome in accordance with Social Security Ruling 99–2p and the Program Operations Manual System (POMS) Guidelines.

## VI. ANALYSIS

Having reviewed the record, the Court finds that there was substantial evidence to support the ALJ's decision and, accordingly, will adopt the Magistrate Judge's Report and Recommendation.

### A. Weight Given to the Opinion of the Treating Physician

 Hirschfeld claims that the ALJ did not give adequate consideration to the opinion of her treating physician, Dr. De-Benedictis. The Court disagrees.

 "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000). The opinion of a treating physician should be given "controlling weight" when it is "not inconsistent" with other "substantial evidence" in the case record and is "well supported" by "medically ac-

ceptable clinical and laboratory diagnostic techniques." *Bencivengo v. Apfel,* No. C.A. 99–6153, 2000 WL 875684, at *3 (E.D.Pa. June 14, 2000) (citing 20 C.F.R. § 404.1527(d)(2)). Such consideration is given to the physician's opinion because he is most able "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 416.920(d)(2); *see also* Social Security Ruling 99–2p, 1999 WL 271569, at *7 (characterizing the opinions of treating physicians as "important" and "helpful" in evaluating a claimant's residual functional capacity).

Here, the ALJ accorded significant weight and consideration to the opinion of Hirschfeld's treating physician, Dr. De-Benedictis. The ALJ reviewed Dr. De-Benedictis' medical records, in which the doctor reported that Hirschfeld "had done well adjusting her lifestyle to tolerate her chronic fatigue syndrome" and that her "chronic fatigue syndrome had improved dramatically." (R. 19, 207–08.) As the ALJ also pointed out, Dr. DeBenedictis' records indicated that Hirschfeld had visited his office only "a few times" after December 1993, demonstrating that her condition was not as disabling as she claimed. (R. at 19.) Consequently, the Court concludes that the ALJ sufficiently considered the opinion of Hirschfeld's treating physician in reaching his decision to deny disability benefits.[4]

---

**4.** In her Objections to the Report and Recommendation, Hirschfeld also claims that the Magistrate Judge made the following erroneous conclusions: (1) that Dr. Benedictis' opinion conflicted with other opinions and (2) that the ALJ properly rejected DeBenedictis' opinion. These claims presumably are based upon a misinterpretation of the Report and Recommendation because the Magistrate Judge never reached the conclusion that Dr.

DeBenedictis' opinion conflicted with other medical opinions or that the ALJ rejected Dr. DeBenedictis' opinion. What the Magistrate Judge did conclude, however, was that Hirschfeld's claim conflicted with the medical records and that the ALJ properly relied upon, and did not reject, the opinion of Dr. DeBenedictis. Accordingly, the Court finds that these claims have no basis for support.

### B. Weight Given to Subjective Complaints

■ The Court also agrees with the Magistrate Judge's conclusion that it was within the ALJ's discretion to make credibility determinations and to discount Hirschfeld's subjective complaints if he found them not credible.

■ A claimant's testimony regarding his or her subjective pain is entitled to great weight, particularly when supported by competent medical evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). The ALJ, however, has discretion to make a determination on the credibility of witnesses and to reject the claimant's claim of disabling pain if he affirmatively addresses the claim in his decision, specifies the reasons for rejecting it, and has support for his conclusion in the record. *Capoferri v. Harris,* 501 F.Supp. 32, 37 (E.D.Pa.1980), *aff'd,* 649 F.2d 858 (3d Cir.1981); *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). Consequently, if supported by substantial evidence, the ALJ's credibility findings may not be disturbed upon appeal. *Van Horn v. Schweiker,* 717 F.2d 871, 871 (3d Cir. 1983); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981); *Baerga,* 500 F.2d at 312.

Here, the ALJ found that Hirschfeld's claim of disabling pain was not credible. His reasoning for the finding was specified in his decision and supported by the record. As noted by the ALJ, the objective medical evidence, such as laboratory tests and medical reports, did not support Hirschfeld's claim, and there were significant periods of time in which Hirschfeld did not visit the doctor, indicating that the pain was not as disabling as she had claimed. (R. at 19.) Additionally, Hirschfeld's subjective account of her symptoms was contradictory because "she reported at one place that she sleeps ten to twelve hours each night and naps during the day," but then later "testified that she has difficulty sleeping." (R. at 21.) Hirschfeld's daily activities were also inconsistent with her claim because she exercised regularly at a health spa, riding six miles a day on a stationary bicycle, and took a cruise and numerous vacations to places such as Las Vegas, Florida, Arizona, and the west coast. (R. at 21.) *See Wilson v. Apfel,* No. Civ. A. 98–6511, 1999 WL 993723, at *3 (E.D.Pa. Oct.29, 1999) (quoting *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)) ("A claimant's daily activities is one factor to be considered in evaluating the credibility of a claimant's subjective allegations of pain.").[5] Consequently, the record clearly supports the ALJ's credibility findings, and, thus, it is not within the province of the Court to disturb those findings.

### C. Fibromyalgia

■ Hirschfeld next argues that the ALJ should have found her fibromyalgia to be a severe impairment and that the Magistrate Judge erred in failing to reach this

---

5. Because the Court concludes that the Plaintiff engaged in significant activities and that the ALJ gave adequate consideration to the opinion of Hirschfeld's treating physician, it finds this case distinguishable from *Reddick v. Chater,* 157 F.3d 715 (9th Cir.1998), the case which Hirschfeld argues supports her claim. In *Reddick,* the Ninth Circuit Court of Appeals held that the ALJ erred in failing to state his reasons for discounting the opinion of the plaintiff's treating physician. Here, however, as discussed *supra* in Section VI.A, the ALJ did not discount the opinion of Hirschfeld's treating physician, but rather, relied heavily upon the records and notes of Dr. DeBenedictis. Additionally, unlike Hirschfeld, the plaintiff in *Reddick* did not engage in significant daily activities. Accordingly, the Court rejects Hirschfeld's claim that the Magistrate Judge erroneously concluded that *Reddick* did not support her case.

conclusion. The Court finds that there is substantial evidence in the record to support the ALJ's finding, and therefore, the Magistrate Judge did not err in his conclusion.

Fibromyalgia, also called fibrositis, is a disease involving muscle and musculoskeletal pain. *Alvarado v. Chater*, Civ. No. 96–2710, 1997 WL 43008, at *1 (E.D.Pa. Jan.24, 1997) (quoting *Preston v. Secretary of Health and Human Servs.*, 854 F.2d 815, 817 (6th Cir.1988)). Its causes are unknown, it is currently incurable, and there are no laboratory tests for its presence or severity. *Wilson v. Apfel*, No. Civ. A. 98–6511, 1999 WL 993723, at *1 n. 1 (E.D.Pa. Oct.29, 1999) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996)). Its symptoms are entirely subjective and include pain, fatigue, disturbed sleep, stiffness, and multiple tender spots on the body. *Id.* Because of "the unique subjectivity of the condition and the ease with which its symptoms can be feigned," there is an emphasized "need to endow the ALJ, as initial fact finder, with the authority to determine issues of credibility." *Id.* at *3.

The Court does not doubt that Hirschfeld is afflicted with fibromyalgia, "but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [Hirschfeld] is one of the minority." *Alvarado*, 1997 WL 43008, at *1 (quoting *Sarchet*, 78 F.3d at 307). There is nothing in the record to indicate that Hirschfeld's fibromyalgia was one of the minority cases. The only medical evidence concerning

Hirschfeld's fibromyalgia prior to the expiration of her insured status was a note from Dr. DeBenedictis, which stated "all progressing, fibromyalgia, raynaud's more severe." (R. at 198.) The doctor did not report on the nature or severity of the condition, and he does not state the effects it had on Hirschfeld. Consequently, the ALJ had only Hirschfeld's subjective complaints to rely on in making his determination, and as discussed *supra*, it was within his discretion to find them not credible, as Hirschfeld's account was contradictory and inconsistent with her daily activities. Thus, the record supports the ALJ's finding that Hirschfeld's fibromyalgia was not a severe impairment. Accordingly, the finding will not be disturbed by the Court.

### D. Social Security Ruling 99–2p and the POMS Guidelines

 Hirschfeld claims that the Magistrate Judge erred by failing to analyze Plaintiff's chronic fatigue syndrome (CFS) in accordance with Social Security Ruling 99–2p and the POMS Guidelines[6]. The Court disagrees.

Both the Social Security Ruling and the POMS Guidelines define CFS as a systematic disorder consisting of variable symptoms and signs that may differ in duration and severity. Social Security Ruling 99–2p, 1999 WL 271569, at *1 (S.S.A. Apr. 30, 1999); POMS § DI 24575.005. The most prevalent symptom is persistent fatigue that lasts for at least six months and results in a substantial reduction in previous levels of activities. *Id.* There are no generally accepted criteria for diagnosing CFS, and physical examinations may be within normal limits. *Id.* Consequently,

---

**6.** The Program Operations Manual Systems (POMS) Guidelines are the authorized means for issuing official Social Security policy and operating instructions; however, they "do not have the force of law." *Edelman v. Commissioner of Soc. Sec.*, 83 F.3d 68, 71 n. 2 (3d Cir.1996) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)); POMS § AO 20002.001. The guidelines on chronic fatigue syndrome, POMS § DI 24575.005, were issued by the Social Security Administration in 1993. *Id.*

**813**

"[i]ndividual cases are to be adjudicated based on the totality of the evidence, including the clinical course from the onset of the illness, symptoms, signs, and laboratory findings." POMS § DI 24575.005. As explained in Social Security Ruling 99–2p, however, CFS can be the basis for a finding of "disability," only when it is "accompanied by appropriate medical signs or laboratory findings." Social Security Ruling 99–2p, 1999 WL 271569, at *1. As also set forth in the Ruling, the ALJ must make discretionary credibility findings as to the claimant's subjective report on his or her symptoms and complaints, and must give adequate consideration to the opinion of the claimant's treating physician. *Id.* at *4.

Here, the Magistrate Judge determined that it was within the ALJ's discretion to find Hirschfeld's subjective complaints not credible. He reviewed the record and concluded that it supported the ALJ's credibility findings. In particular, the Magistrate Judge found that Hirschfeld's claim of disabling pain was inconsistent with her daily activities and the notes of Dr. DeBenedictis, in which he reported that her CFS was improving enormously. (R & R at 18, 21; R. at 207–08.) The Magistrate Judge also stressed in his report that there were no laboratory findings to support Hirschfeld's claim of totally disability due to CFS. (R & R at 18.) Accordingly, the Court rejects Hirschfeld's objection and concludes that the Magistrate Judge's Report and Recommendation was in accordance with Social Security Ruling 99–2p and the POMS Guidelines.

## VII. CONCLUSION

The ALJ's decision to deny the Plaintiff disability benefits is supported by substantial evidence in the record, and the Plaintiff's Objections to the Magistrate Judge's Report and Recommendation therefore are rejected. Accordingly, the Plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An Order follows.

### *ORDER*

Having considered the parties' motions for summary judgment, and having reviewed the Report and Recommendation of U.S. Magistrate Judge Arnold C. Rapoport, the Plaintiff's Objections, and the entire record, including the ALJ's written Decision, the transcript of the hearing, and the hearing exhibits, it is **ORDERED**, this 23rd day of February 2001, that:

1. The Report and Recommendation (docket #11) is **APPROVED and ADOPTED**;

2. The Plaintiff's Motion for Summary Judgment (docket #6) is **DENIED**; and

3. The Defendant's Motion for Summary Judgment (docket #9) is **GRANTED.**