**Raymond G. DOAK, Appellant,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services.**

**No. 85–3601.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 28, 1986.

Decided May 7, 1986.

---

Cynthia C. Berger, Berger and Reed, P.C., Pittsburgh, Pa., for appellant.

Beverly Dennis, III, Reg. Atty., Charlotte Hardnett, Supervisory Asst. Reg. Atty., John E. Newton, Jr., Asst. Reg. Atty., Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty. Barbara M. Carlin, Asst. U.S. Atty., W.D. of Pa., Pittsburgh, Pa., for appellee.

Before SLOVITER and STAPLETON, Circuit Judges and LONGOBARDI, District Judge *.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Raymond Doak is a 54 year old man with a ninth grade education who

worked as a maintenance man until August 1982. He filed an application for disability insurance benefits on May 12, 1983, alleging that he had been unable to perform any substantial gainful activity since August 23, 1982 because of back problems, emphysema, chest pains, and feet trouble. The application was denied.

After a hearing de novo, the ALJ concluded that

> the claimant's emphysema and arthritis would prevent the claimant from performing a job requiring heavy lifting. Since the claimant's last work as a maintenance man required him to lift an excess of 100 pounds, ... claimant does not have the residual functional capacity to perform his past relevant work.... [However] the claimant has the residual functional capacity to perform light work. Light work would entail standing and walking most of an 8 hour work day, with a lifting of a maximum of 20 pounds.

Tr. at 11. The ALJ added that "there is no evidence that the claimant could not perform a job requiring only the lifting of a maximum of 20 pounds", i.e., light work, and found that claimant's other complaints were not supported by objective medical evidence and were not credible. *Id.* Because the ALJ found the claimant capable of light work, application of the grid directed a conclusion of not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2 (1985).

The Appeals Council denied claimant's request for review. Claimant sought review in the United States District Court for the Western District of Pennsylvania which granted the Secretary's motion for summary judgment. This appeal followed.

On appeal, claimant contends that the ALJ committed several reversible errors: finding that claimant is capable of performing light work; improperly discounting the opinion of the appellant's treating physician; not considering the combined effects of claimant's impairments and disregarding

---

* Hon. Joseph J. Longobardi, United States District Court for the District of Delaware, sitting     by designation.

his subjective complaints of disabling pain; and improperly using the medical-vocational guidelines. We find the first issue dispositive.

The standard of review is whether the Secretary's decision is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In prosecuting a disability claim, the claimant's initial burden is to demonstrate the existence of a medically determinable disability which precludes resumption of previous employment. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979); *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). Once the claimant has done so, the burden shifts to the Secretary to show that, considering the claimant's age, education, and work experience, the claimant has the capacity to perform jobs that exist in the national economy. *Id.*

In the instant case, the ALJ concluded that the appellant has a severe impairment which is not disabling per se but does not have the residual functional capacity to perform his past relevant work. In determining whether appellant could nonetheless engage in substantial gainful activity, the ALJ made the critical finding that claimant was able to do light work. That finding is not supported by substantial evidence in the record.

The record consists of claimant's testimony, three medical reports made between June and December 1983, and a vocational expert's testimony. In addition to explaining his ailments, claimant testified that he runs a humidifier in his home, and uses a bronchodilator (for his breathing) and anti-anxiety medication. His average day is spent watching television in a sitting position, after which he often eats out with friends and drinks approximately eight beers. Tr. 34-37.

Dr. Glenn Roberts, claimant's treating physician, described claimant's complaints and made the following observations in December 1983:

X-ray suggests patient has an arthritic condition, with a spur formation in lumbar area, and contributes to his severe pain and limited motion in this area.

There is discoloration in patient's feet, which are cold to palpation.

Tr. at 97. He then diagnosed claimant as having

1. Advanced Arthritis of Spine, with spurring formation
2. Liver Disease, secondary to Alcoholism
3. Depressive Reaction, with Anxiety State
4. Artersclerotic Vascular Dx. (Renalds Dx) [sic]
5. Pulmonary Emphysema
6. Hypertension

Tr. at 98. Dr. Roberts then concluded:

It is my professional opinion that this patient is unable to fulfil [sic] any of the responsibilities for any type of gainful employment, and will remain totally disabled in the foreseeable future, due to his above conditions.

Tr. at 98. Dr. Roberts attached to this report the X-ray analysis by Dr. Yobbagy which apparently supports Dr. Roberts' diagnosis of spinal problems. Tr. at 99.

Dr. S.P. Barua, an orthopedic surgeon who examined Doak for the Pennsylvania Bureau of Disability, concluded in September 1983 that:

This patient has emphysema, also has metatarsalgia secondary to cavus feet. His metatarsalgia is usually symptomatic during prolonged standing and also walking. Unfortunately, no corrective shoes or maetatarsal bar has been added to see if he gets any relief from the foot pain. It appears to me that he is more disabled from his chest condition than from his feet.

I certainly feel that he is capable of doing sedentary work.

Tr. at 92.

Finally, Dr. Subramonium Jayakumar, an Internist who examined Doak for the same agency in June 1983, incorporated a pulmonary function report, an X-ray consultation, and an electrocardiogram in his report. Dr. Jayakumar stated that:

1. Electrocardiogram done in my office showed occasional PVC's.

2. Pulmonary function study showed moderate severe obstructive defect with restrictive component, responsive to bronchodilator.

3. X-ray Pa and both lateral chest showed some demineralization of the thoracic spine.... Scattered fibrocalcific changes are seen bilaterally.... There is pleural scarring laterally on the right. There is prominence of the left hilus which may be simply vascular in nature. However, the hilus appears more prominent than has been seen on prior studies, and I cannot exclude developing neoplasm. Tomographic sections of the hilar areas would lend further information.

4. Thoracici spine, x-ray shows degenerative demineralization with osteophytes seen anteriorly involving the mid thoracic vertebral bodies. There is slight scoliosis with convexity to the left of the lower thoracic spine. There is no evidence of recent or prior fracture of the thoracic spine.

5. Stress test done showed that the patient was only able to exercise to a total of 4 METs of activity reaching a heart rate of 133 at which time he was extremely short of breath and was indeed noticed that the wheezing was much worse.

Tr. at 89. He concluded that claimant had emphysema but made no evaluation as to ability to work.

The vocational expert testified only about claimant's age, education, and past work experience. He concluded that claimant's past work gave him some transferable abilities such as eye-hand coordination, manual dexterity, and use of certain tools. He did not discuss claimant's ability to do that or any other work given claimant's emphysema or any other medical complaints.

The Social Security regulations discussing physical exertion requirements define sedentary work and light work as:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) & (b) (1985). It is apparent that "light work" is more strenuous than "sedentary work."

The record does not support a finding that claimant could do light work as defined in the regulations. One physician believes Doak is totally disabled, another said he could do sedentary work, and a third made no conclusion about ability to work but stated that the claimant "was only able to exercise to a total of 4 METs of activity reaching a heart rate of 133 at which time he was extremely short of breath and [it] was indeed noticed that the wheezing was much worse." Tr. at 89. No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.

When an applicant in Doak's circumstances can, at most, do sedentary work, a

finding of disability depends on whether he has transferable skills. Under the appropriate grid for sedentary work, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, a person of claimant's age, education, and work experience is disabled if s/he has no transferable skills.

The ALJ concluded that claimant had transferable skills based on the testimony of the vocational expert. The testimony was not to that effect. When the ALJ asked if claimant's work experience provided any learned skills, the vocational expert stated "I would say learned ability, not particularly skilled. It would be learning, performing particular tasks within a specialized path within a company. Learning to use [hand] tools, certain amount of judgment." Tr. at 45. When the ALJ asked again later if claimant's semi-skilled work were transferable, the expert replied that "[t]here are abilities that can be transferable" but such transfer of abilities would depend on potential physical limitations. Tr. at 47. The ALJ said "That doesn't make any sense. I will decide that question" and again pressed the expert for claimant's transferable skills. The expert replied:

> These transferrable skills again would be the eye-hand coordination, and the finger dexterity, the ability to perform the required standards and specifications. He did have to adapt to a particular routine, within that work environment which would be transferable, he used hand tools, can move and guide materials which can be transferrable, and it could be transferrable to bench work type occupations, for example bench machine operation.

Tr. at 48. It was evident that the expert was referring to very general motor abilities and not to the type of transferable skills that would make a distinction between classifying an applicant as disabled or not disabled. Since the ALJ referred to no other bases for his conclusion that Doak had transferable skills, we find that this conclusion also is not supported by substantial evidence.

In this case, remand to the Secretary for a finding about work ability consistent with the record is inappropriate. *See, e.g., Gilliland v. Heckler*, 786 F.2d 178 (3d Cir.1986); *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986). The record can support no more than a finding that claimant is able to do sedentary work and has no transferable work skills. Therefore, a holding of disability is compelled.

Accordingly, the decision of the district court will be reversed and remanded with the direction that Doak be awarded disability benefits.