An appropriate order follows.

**Omar ALVARADO, Plaintiff,**

v.

**Carolyn COLVIN, Commissioner of Social Security, Defendant.**

**CIVIL ACTION NO. 14–4029**

United States District Court,
E.D. Pennsylvania.

Filed November 13, 2015

David F. Chermol, Chermol & Fishman LLC, Philadelphia, PA, for Plaintiff.

Andrew C. Lynch, Philadelphia, PA, for Defendant.

## ORDER

LAWRENCE F. STENGEL, District Judge

**AND NOW**, this 12th day of November, 2015, upon consideration of the plaintiff's request for review, the Commissioner's response, and the plaintiff's reply, and after review of the Report and Recommendation of United States Chief Magistrate Judge Linda K. Caracappa, **IT IS HEREBY ORDERED** that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**;

2. The plaintiff's request for review is **GRANTED**;

3. The case is **REMANDED** in accordance with the fourth sentence of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration for proceedings consistent with the Report and Recommendation of United States Chief Magistrate Judge Linda K. Caracappa.

**ACCORDINGLY**, the Clerk of Court is directed to mark this case **CLOSED**.

## REPORT AND RECOMMENDATION

LINDA K. CARACAPPA, UNITED STATES MAGISTRATE JUDGE

Plaintiff Omar Alvarado brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Presently before this court are plaintiff's request for review, the Commissioner's response, and plaintiff's reply. For the reasons set forth below, we recommend that plaintiff's request for review be **GRANTED** in part and **DENIED** in part.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 11, 2012, plaintiff protectively filed applications for DIB and SSI. (Tr. 138–150). On March 16, 2012, the Social Security Administration denied plaintiff's claims. (Tr. 82–85). Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").

On March 13, 2013, ALJ Jennifer M. Lash held a hearing, and plaintiff as well as an impartial vocational expert, Agnes Gallen, testified. (Tr. 27–63). Plaintiff was represented at the hearing by David Chermol, Esq. On April 24, 2013, the ALJ issued an opinion finding plaintiff not disabled under the Act since June 30, 2010, the alleged onset date. (Tr. 23). Plaintiff filed a request for review, and on February 14, 2014, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). Plaintiff subsequently commenced this civil action with the assistance of counsel.

## II. LEGAL STANDARDS

Upon judicial review, this court's role is to determine whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir.2005). Moreover, it is relevant evidence viewed objectively as adequate to support a decision. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kangas v. Bowen,* 823 F.2d 775 (3d Cir.1987); *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir.1979). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclu-

sion for that of the ALJ. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir.2002). If the court determines the ALJ's factual findings are supported by substantial evidence, then the court must accept the findings as conclusive. *Richardson,* 402 U.S. at 390, 91 S.Ct. 1420; *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420. While the Third Circuit has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir.2004). Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler,* 750 F.2d 245 (3d Cir.1984).

To establish a disability under the Act, the claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health and Human Services,* 841 F.2d 57 (3d Cir.1988) (quoting *Kangas,* 823 F.2d at 777); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986); *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979) (citing *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966)). Once this showing is made, the burden of proof shifts to

the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 404.1520. *See Rossi,* 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

(i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

## III. ADMINISTRATIVE LAW JUDGE'S DECISION

Pursuant to the five-step sequential evaluation process for adults, the ALJ determined that plaintiff had not been under a "disability," as defined by the Act, since June 30, 2010, the alleged onset date. (Tr. 11–26).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 30, 2010, the alleged onset date. (Tr. 27). At step two, the ALJ found that plaintiff had the following severe impairments: affective disorder, anxiety disorder, and substance abuse. (Tr. 16). In proceeding with the sequential evaluation, the ALJ cited to the following medical records throughout her opinion, which we have independently reviewed and summarized as follows:

On January 11, 2012, plaintiff's treating psychiatrist, Dr. Gopalani, M.D. completed a biopsychosocial evaluation. (Tr. 227–251). Dr. Gopalani noted that plaintiff reported on going PCP and marijuana use, which worsened plaintiff's depression and paranoia. (Tr. 244). Plaintiff reported that he used wet marijuana three or four times a day. (Tr. 230). Dr. Gopalani diagnosed plaintiff with major depressive disorder, posttraumatic stress disorder, and drug abuse. (Tr. 244). Plaintiff was given a Global Assessment Functioning ("GAF")[1] score of 55.[2]

1. While the most recent edition of the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM–V") has discontinued the use of GAF scores, GAF scores remain medical evidence. GAF scores were used by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." *Irizarry v.*

On March 13, 2012, Dr. April Colbert, Psy.D., performed a consultative psychological examination. (Tr. 252–259). Dr. Colbert reported that plaintiff was poorly dressed and groomed, with poor basic functioning and hygiene. (Tr. 252). Plaintiff reported he could not work because of plaintiff's depression, anxiety, and the fact that plaintiff has trouble sleeping. (Tr. 253). Plaintiff reported smoking wet marijuana. (Tr. 254). Plaintiff noted that he was prescribed Prozac, Risperdal, and Remeron, and that the medications were somewhat effective. (Tr. 255). Plaintiff reported that he was not taking his medications, which has increased plaintiff's agitation. (Tr. 254). Dr. Colbert noted that plaintiff's attention and concentration skill were moderately impaired, however, plaintiff demonstrated no impairment in his ability to understand, remember, and carry out one to two-step instructions. Additionally, plaintiff may have a moderate impairment in his ability to interact appropriately with supervisors, co-workers, and the public. Dr. Colbert also noted that plaintiff may mildly be able to tolerate day to day work pressures with compliance with mental health treatment. (Tr. 258). Plaintiff demonstrated moderate impairment in his ability to understand, remember, and carry out detailed instructions. (Tr. 258). Dr. Colbert diagnosed plaintiff with major depressive disorder, recurrent, moderate with psychotic features, and rule out posttraumatic stress. (Tr. 258). Plaintiff was given a GAF score of 58.

On March 15, 2012, following a review of the record, a non-examining state agency psychologist, Frank Mrykalo, Ed.D., completed a psychiatric review technique form and mental residual functional capacity assessment. (Tr. 64–79). Dr. Mrykalo provided a diagnosis of affective disorder, and alcohol and substance abuse addiction disorder. (Tr. 66). It was noted that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 67).

On April 17, 2012, Zandra Rodriguiz, plaintiff's social worker, completed a medical source statement. (Tr. 261–266). Ms. Rodriguiz noted that plaintiff's ability to understand, remember, and carry out simple, detailed, and complex instructions is fair. (Tr. 263).

Plaintiff was seen at Northeast Community Mental Health Center, Inc., from January 3, 2012 through February 27, 2013. (Tr. 267–303). Plaintiff repeatedly reported being depressed and being unable to sleep. Plaintiff reported weekly that he is alone, and has no one to talk to. On February 2, 2012, plaintiff complained of

*Barnhart*, 233 Fed.Appx. 189, 190 n. 1 (3d Cir.2007). A GAF score is not considered to have a "direct correlation to the severity requirements, 66 Fed.Reg. 50746, 50764–65 (2000); however, a GAF score constitutes medical evidence and must be addressed by the ALJ in making the disability determination. *Watson v. Astrue*, No. 08–1858, 2009 WL 678717, at *5 (E.D.Pa. Mar. 13, 2009) (*citing Colon v. Barnhart*, 424 F.Supp.2d 805, 812 (E.D.Pa.2006)). *See also Dougherty v. Barnhart*, No. 05–5383, 2006 WL 2433792, at *9 (E.D.Pa. Aug. 21, 2006).

**2.** A GAF score of 31–40 indicates "some impairment in reality testing or communication ... or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF score of 51–60 indicates "moderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV) at 32.

difficulty sleeping and reported continued use of PCP. (Tr. 298). On April 11, 2012, plaintiff denied using PCP. (Tr. 292). On August 29, 2012, plaintiff reported still using PCP. (Tr. 282). On October 22, 2012, it was noted that plaintiff was participating in a drug and alcohol program and was in a shelter for the homeless. (Tr. 279). On January 2, 2013, plaintiff reported that he was still not using drugs, and living in a recovery house. Plaintiff also stated that he was sleeping better. (Tr. 272). On February 19, 2013, plaintiff reported that he was not sleeping. (Tr. 267).

Continuing with the five step analysis, the ALJ moved onto step three. At step three, the ALJ found plaintiff does not have an impairment, or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 25).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to unskilled work with routine, repetitive tasks performed in a low stress environment (defined as no frequent independent decision making and no frequent changes in the work setting) with no frequent judgment required, no public interaction, and only occasional interaction with co-workers and supervisors. (Tr. 18). The ALJ considered all symptoms and the extent to which the symptoms could reasonably be accepted consistent with the objective medical evidence and other evidence. Further, the ALJ considered opinion evidence. (Tr. 18–19).

Finally, at step five the ALJ found that plaintiff is unable to perform any past relevant work. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 22). Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, since June 30, 2010, date plaintiff claimed disability since. (Tr. 23).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff argues that: (1) the ALJ failed to follow the requirements of SSR 00–4p because the ALJ did not ask the VE about a conflict between the VE's testimony and information contained in the Dictionary of Occupational Titles ("DOT"); (2) the ALJ's failure to rule on plaintiff's written objections, about the vocational expert's testimony, violated HALLEX (Hearings, Appeals, and Litigation Law Manual, published by the Social Security Administration's Office of Disability Adjudication and Review); (3) the ALJ failed to properly consider the medical source opinions of record; and (4) the ALJ erred in not finding plaintiff's sleep impairment was a severe impairment.

## V. DISCUSSION OF MERITS

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Richardson v. Perales, supra.*

In the case at bar, the ALJ determined that medical evidence established plaintiff's affective disorder, anxiety disorder,

and substance abuse were "severe" impairments within the meaning of the Regulation. (Tr. 16). The ALJ further found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to unskilled work with routine, repetitive tasks performed in a low stress environment (defined as no frequent independent decision making and no frequent changes in the work setting) with no frequent judgment required, no public interaction, and only occasional interaction with co-workers and supervisors. (Tr. 18). The ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 22). After review of the records, this court finds that portions of the ALJ's decision were not supported by substantial evidence. As such, plaintiff's request for review should be granted in part and the case be remanded to the Commissioner.

A. *Conflict Between Vocational Expert's Testimony and Information in the Dictionary of Occupational Titles*

Plaintiff argues that the ALJ failed to follow the requirements of SSR 00–4p because the ALJ did not ask the VE about a conflict between the VE's testimony and information contained in the Dictionary of Occupational Titles ("DOT"). Plaintiff alleges that the ALJ erred by finding plaintiff is able to perform work as a grounds maintenance worker (DOT, 406.687010), airplane/bus cleaner (DOT, 919.687–014), and garment sorter (DOT, 222.687–014) because the ALJ failed to resolve the conflict between the DOT descriptions of the jobs' reasoning levels and the restriction on plaintiff given to the VE by the ALJ. Plaintiff explains that the ALJ's hypothetical to the VE placed a reasoning restriction on plaintiff that plaintiff was limited to routine, repetitive tasks. Plaintiff argues that according to the DOT the positions of grounds maintenance worker, airplane/bus cleaner, and garment sorter require greater reasoning skills than those imposed by the ALJ's limitation of jobs with routine, repetitive tasks. Plaintiff states that a limitation of routine, repetitive tasks allows for only level 1 reasoning skills. Plaintiff further argues that according to the DOT all three jobs identified by the vocational expert require level 2 reasoning skills, which require the ability to carry out "detailed" instructions. This exceeds the ALJ's residual functional capacity finding based on its limitation to "routine repetitive tasks."

The DOT lists all jobs available in the national economy and the skill requirements necessary to perform each job. SSR 00–4p, at 8. In particular, the Specific Vocational Preparation ("SVP") defines the skill level required for the job, while the General Education Development ("GED"), which includes Reasoning Development, Mathematical Development, and Language Development, provides informal and formal educational requirements. DOT, App. C; *see also McHerrin v. Astrue,* 2010 WL 3516433, at *9 (E.D.Pa.2010) (discussing the relevant sources in assessing plaintiff's ability to perform past work in light of limitations). The reasoning development requirement within the GED is at issue here. The SVP levels listed in the DOT also correspond with the Code of Federal Regulations' three categories of work—unskilled, semi-skilled, and skilled—however, the regulations do not specify reasoning requirements and do not correspond with the reasoning development levels in the DOT. *McHerrin,* 2010 WL 3516433, at *9. We note that the reasoning development requirement is a factor to consider in addition to the classification of unskilled work.

In the DOT, a job with reasoning level 2 is defined as the "ability to apply common sense and understanding, to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." DOT, App.C. A job with a reasoning level of 1 requires skills to "Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C.

 SSR 00–4p provides guidance to resolve conflicts between the DOT and occupational evidence provided by a VE. SSR 00–4p, at 1. The Administration explained that "[w]hen there is an apparent unresolved conflict between vocational expert or vocational specialist evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the vocational expert or vocational specialist evidence to support a determination or decision about whether the claimant is disabled." *Id.* at 2. "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved." *Zirnsak v. Colvin,* 777 F.3d 607, 617 (3d Cir.2014) (citation and internal quotation marks omitted). Although failure to comply with these requirements "may warrant remand in a particular case, … the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* (citations and internal quotation marks omitted).

The Commissioner argues that plaintiff's claim fails because the residual functional capacity restriction of unskilled work with routine, repetitive tasks, was not linked to the GED reasoning level, rather is was it was strictly linked to the DOT's classification of a job's SVP level. The court does not agree with this argument. As explained above, the GED reasoning level and SVP level are two separate and distinct things. The unskilled work restriction is linked to the SVP level, and the routine, repetitive tasks restriction is linked to the GED reasoning level.

To the extent plaintiff argues that there is a conflict between the vocational expert's testimony and the DOT simply because the ALJ limited plaintiff to "routine, repetitive tasks" and the jobs identified by the vocational expert have reasoning level of 2, this argument is without merit. In *Money v. Barnhart,* 91 Fed.Appx. 210, 215 (3d Cir.2004), the court expressly found that "working at reasoning level 2 would not contradict the mandate that [the claimant's] work be simple, routine and repetitive." Accordingly, there is no inherent conflict between any of the jobs identified by the vocational expert and those jobs as listed in the DOT strictly in regard to reasoning level.

 However, plaintiff also argues that there is a conflict between the vocational expert's testimony and the DOT because the vocational expert testified that plaintiff would not be able to perform jobs that required the ability to carry out detailed instructions, and all three jobs identified by the vocational expert require the ability to carry out detailed instructions. As noted above in the DOT, a job with reasoning level 2 is defined as the "ability to apply common sense and understanding, to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations." DOT, App.C. Plaintiff cites to the vocational expert tes-

timony on cross-examination in support of the argument that there is a conflict here. The vocational expert testified under cross-examination by plaintiff's counsel as follows:

Questioning by Plaintiff's Attorney: Okay. With the Judge's question about, I think it was both hypos had this, the limitation to routine, repetitive tasks, would that limitation preclude the ability to carry out detailed instructions?

Answer by VE: Yes.

Q: Okay. You identified three jobs, correct?

A: Yes.

Q: And what was, what was the name of the third one? It was 222.687–014, but I didn't write down the name?

A: That would be garment sorter.

Q: And the other one was a cleaner?

A: Airplane or bus cleaner.

Q: Okay. Is it correct that reasoning level and SVP are independent and distinct concepts in the DOT?

A: Yes.

Q: And is it correct according to Appendix C of the DOT that SVP refers strictly to the amount of time it takes to learn a job?

A: Yes, specific vocational preparation.

Q: Okay. And the G[E]D reasoning scale stuff that reflects more the mental prerequisites for performing a job?

A: Yes, the ability to read and do math.

Q: And some jobs are high skill level and low reasoning level; some are low skill level and a higher reasoning level; and others are high reasoning level and high skill level, is that right?

A: Yes. (Tr. 61–62).

The Commissioner argues that plaintiff's claim fails because when the ALJ asked the vocational expert at the hearing whether her testimony was consistent with the DOT, the vocational expert testified it was, and plaintiff's counsel failed to challenge the vocational expert on that point during the hearing. However, as evidence by the testimony cited above, plaintiff's counsel clearly challenged the vocational expert on her testimony. Plaintiff's counsel asked the vocational expert if the restriction to routine, repetitive tasks, would preclude plaintiff from being able to carry out detailed instructions. The vocational expert testified that yes, a restriction to routine, repetitive tasks, would preclude plaintiff from being able to carry out detailed instructions. All of the jobs identified by the vocational expert required a reasoning level of 2, which requires the ability "to carry out detailed but uninvolved written or oral instructions." There is a conflict between the vocational expert's testimony that a restriction to routine, repetitive tasks, would preclude plaintiff from being able to carry out detailed instructions, and the vocational expert's testimony that plaintiff could perform reasoning level 2 jobs, that require the ability to carry out detailed instructions. The ALJ did not ask the vocational expert to clarify these inconsistencies. A remand is appropriate so that the ALJ can explain these inconsistencies. Accordingly, this issue should also be remanded to the ALJ for further consideration of vocational expert testimony.

B. *The ALJ's Failure to Rule on Plaintiff's Written Objections about the Vocational Expert's Testimony Violated HALLEX*

Plaintiff next argues that the ALJ's failure to rule on plaintiff's written objections to the vocational expert's testimony and the conflict between the testimony and the DOT violated the Agency's Hearing, Appeals, and Litigation Law Manual (HAL-

LEX). Plaintiff submitted written objections to the vocational expert's testimony after the hearing, and the ALJ did not address said objections in the ALJ's opinion. The court will not address this issue, because we have already recommended remand on the above issue, relating to a conflict in the vocational expert testimony. A remand may result in a different finding by the ALJ, making discussion of plaintiff's remaining claims moot. *See Steininger v. Barnhart*, No. 04–383, 2005 WL 2077375, at *4 (E.D.Pa. Aug.24, 2005).

### C. *The ALJ Failed to Properly Consider the Medical Source Opinions of Record.*[3]

Plaintiff argues that the ALJ improperly rejected the medical opinions of plaintiff's treating psychiatrist, Dr. Gopalani, and plaintiff's treating therapist, Ana Perdomo, in favor of the one-time psychological examination by Dr. Colbert, a clinical psychologist.

■ It is well-established in the Third Circuit that an ALJ must afford great weight to the opinion of a treating physician, but this is not without limitation. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993). An ALJ may reject the opinions of a treating physician where the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir.2001). When evaluating a treating physician's opinion and the weight it is to be afforded, the ALJ must consider such factors as the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and any spe-

cialization of the opining physician. 20 C.F.R. § 416.927(d)(2). If there is "conflicting and internally contradictory evidence," the opinion of a treating physician is not necessarily controlling. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir.1991). The ALJ, in refusing to credit the testimony of a treating physician, must base his decision to do so on "objective medical evidence" and not "solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant's] credibility." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (citations omitted).

■ If the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ explains her reasons and makes a clear record. *See Jones*, 954 F.2d at 129. An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e).

■ The ALJ adequately summarized the medical records and Dr. Colbert's opinion, and decided to give Dr. Colbert's opinion significant weight. On March 13, 2012, Dr. April Colbert, Psy.D., performed a consultative psychological examination. (Tr. 252–259). Dr. Colbert reported that plaintiff was poorly dressed and groomed, with poor basic functioning and hygiene. (Tr. 252). Plaintiff reported he could not work because of plaintiff's depression, anxiety, and the fact that plaintiff has trouble sleeping. (Tr. 253). Plaintiff reported smoking wet marijuana. (Tr. 254). Plaintiff noted that he was prescribed Prozac,

---

**3.** Plaintiff raises several arguments throughout claim three and four, the court has reorganized them for clarity purposes.

Risperdal, and Remeron, and that the medications were somewhat effective. (Tr. 255). Plaintiff reported that he was not taking his medications, which has increased plaintiff's agitation. (Tr. 254). Dr. Colbert noted that plaintiff's attention and concentration skill were moderately impaired, however, plaintiff demonstrated no impairment in his ability to understand, remember, and carry out one to two-step instructions. Additionally, plaintiff may have a moderate impairment in his ability to interact appropriately with supervisors, co-workers, and the public. Dr. Colbert also noted that plaintiff may mildly be able to tolerate day to day work pressures with compliance with mental health treatment. (Tr. 258). Plaintiff demonstrated moderate impairment in his ability to understand, remember, and carry out detailed instructions. (Tr. 258). Dr. Colbert diagnosed plaintiff with major depressive disorder, recurrent, moderate with psychotic features, and rule out posttraumatic stress. (Tr. 258). Plaintiff was given a GAF score of 58.

The ALJ explained that plaintiff's treatment was routine and conservative. Although plaintiff alleged an onset date of June 30, 2010, plaintiff did not start regular treatment until January, 2012. The ALJ noted that plaintiff's treatment with mental health professionals was sporadic. Additionally, plaintiff had gaps in medications, such as in February 2013, when it was noted that plaintiff had not been taking his medication for a month, and at the consultative examination, when it was noted that plaintiff provided that he was not taking his medications. The ALJ explained that treatment records showed improvement when plaintiff was taking his medication as recommended, and plaintiff testified that the medications help with his symptoms.

The ALJ gave significant weight to the opinion of Dr. Colbert, as it was consistent with the medical records. Plaintiff has failed to show anything in Dr. Colbert's opinion that is inconsistent with the treatment records. The ALJ did not err in giving Dr. Colbert's opinion significant weight. Plaintiff's claim should be dismissed as to this issue.

■ Plaintiff argues that the ALJ used Dr. Colbert's opinion to create plaintiff's residual functional capacity assessment, thus, the ALJ was required to include all of Dr. Colbert's findings, including the finding that plaintiff may mildly be able to tolerate day to day work pressures with compliance with mental health treatment. The court disagrees. The ALJ stated that she was giving significant weight, not controlling weight, to Dr. Colbert's opinion. The ALJ also noted that she used Dr. Colbert's opinion, new evidence received at the hearing level, and the GAF score of 58, in determining plaintiff's residual functional capacity. The regulations provide that an ALJ has the final responsibility in determining a claimant's residual functional capacity. 20 C.F.R. § 404.1546. The ALJ is not required to include every piece of an examining doctor's opinion, because the ALJ gives the examining doctor's opinion significant weight. The ALJ support the residual functional capacity finding with sufficient evidence. Plaintiff's claim should be dismissed as to this issue.

■ Plaintiff next takes issue with the ALJ's decision to give limited weight to the medical opinions reflected in the records from Northeast Community Mental Health Centers. Plaintiff argues that because those medical records consisted of notes from plaintiff's treating psychiatrist, Dr. Gopalani, and plaintiff's treating therapist, Ana Perdomo, the ALJ should have given them controlling weight. The court first notes that neither Dr. Gopalani nor

Ana Perdomo provided plaintiff with a medical source statement or opined plaintiff was disabled. Further, plaintiff points to no "opinion" from either Dr. Gopalani or Ana Perdomo, that the ALJ improperly gave no weight. The ALJ explained that throughout the majority of the medical records from Northeast Community Mental Health Centers, plaintiff admitted to actively using PCP. The ALJ noted that plaintiff's more recent treatment records indicated that plaintiff was living in a recovery house, and had stopped using drugs. The ALJ explained that she was giving any opinion within the treatment records limited weight. Plaintiff fails to point to any opinion that the ALJ erred in not considering. The ALJ provided substantial support for giving limited weight any opinion within the treatment records from Northeast Community Mental Health Centers.

Additionally, plaintiff argues that the ALJ failed to properly consider the GAF score of 50 from plaintiff's initial biopsychosocial evaluation at Northeast Community Center. However, the ALJ noted that plaintiff reported ongoing use of marijuana and PCP at the time, which was worsening plaintiff's depression and anxiety. The ALJ explained that the GAF score of 50 was inconsistent with the GAF score of 58 that was found by Dr. Colbert at the consultative psychological examination. The ALJ did consider the GAF score of 50 and gave said score no weight. Plaintiff's argument that the ALJ did not properly consider plaintiff's GAF score of 50 should be dismissed.

■ Finally, plaintiff argues that the ALJ erred in giving little weight to the medical source statement completed by Zandra Rodriquez. As the Commissioner notes, Zandra Rodriguez is a social work, and is not an acceptable medical source under the regulations. See 20 C.F.R. §§ 404.1502, 416.1513(a), (d)(1), 416.902, 416.913(a), (d)(1). Therefore, she is merely an "other source" whose opinion is entitled to "significantly less weight." See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The ALJ also adequately explained that Zandra Rodriguez's opinion was given little weight because it was inconsistent with the opinions of Dr. Colbert and Dr. Frank Mrykalo, Ed.D., the non-examining state agency psychologist, and the GAF score of 58 [4].

D. *Whether the ALJ Erred by Not Finding Plaintiff's Sleep Impairment To Be a Severe Impairment*

Plaintiff argues that the ALJ erred in not finding plaintiff's sleep disturbance a severe impairment at step two of the above cited five step analysis.

■ At step two of the sequential analysis, an individual seeking benefits under the Act bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert,* 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is "severe" when it is "of a

---

4. Plaintiff also argues that the ALJ failed to consider the observations of the agency's claim representative, who noted at the January 20, 2012 interview, that plaintiff had poor concentration and plaintiff's girlfriend had to help plaintiff with the application process. The ALJ stated that he considered the entire record. Additionally, two days prior to the interview plaintiff reported to Dr. Colbert that plaintiff was not taking his medications, and on February 1, 2012, plaintiff admitted to continuing to use PCP. The ALJ stated she considered all of the records, the ALJ's failure to specifically cite to this particular observation by the agency's claim representative is harmless. Harmless errors do not require remand. *See Rutherford,* 399 F.3d at 553.

magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir.1982) (*quoting* 20 C.F.R. § 404.1520(b)). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1). An impairment is not severe if it does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a).

■■■■ The Third Circuit Court of Appeals has stated that the burden placed on an applicant at step two is not an exacting one. *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir.2004). An applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (*citing* SSR 85-28, 1985 WL 56856, at 3). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3rd Cir.2003). "Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *McCrea*, 370 F.3d at 360. The Third Circuit does not, however, suggest that a district court should apply a more stringent standard of review in these cases. *Id.* "The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *See id.* at 360–61 (citations omitted).

■■■■ The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*,

482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Additionally, the analysis at step two is wholly independent of the analysis at later steps. Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at step two, "even if he ... erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n. 2 (3d Cir.2007).

■■■■ The ALJ found that plaintiff's affective disorder, anxiety disorder, and substance abuse were severe impairments and proceeded to step three. At step four, the ALJ considered the impact of plaintiff's severe and non-severe impairments to create plaintiff's residual functional capacity. Based on plaintiff's residual functional capacity, the ALJ determined that plaintiff was not disabled. Accordingly, the ALJ's failure to find plaintiff's sleep disturbance severe at step two had no effect on the ultimate determination of non-disability. As such, we find any error to be harmless. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005)(harmless error standard). Thus, plaintiff request for review should be denied as to this claim.

Therefore, we make the following:

### RECOMMENDATION

AND NOW, this 30th day of September, 2015, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED in part, and the case remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.